**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
*mdb@kuzykclassactions.com*
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311

**DENLEA & CARTON LLP**
Leigh Smith *(pro hac vice forthcoming)*
*lsmith@denleacarton.com*
2 Westchester Park Drive, Suite 410
White Plains, NY 10604
Telephone: (914) 331-0100

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **AZIZAH ALI AND SHAHAYRA ROY, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**GARZA FOOD VENTURES, LLC D/B/A SIETE FOODS, and PEPSICO, INC.,**<br><br>**Defendant.** | **CASE NO.:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Azizah Ali and Shahayra Roy ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their undersigned counsel, bring this class action against Defendants Garza Food Ventures, LLC d/b/a Siete Foods and PepsiCo, Inc. (collectively, "Defendants"), and state as and for their Complaint as follows:

## NATURE OF THE ACTION

1. Decisions about which foods to purchase are extremely important to consumers – like Plaintiffs who are concerned about the quality, health impact, and ingredients of the food they consume.

2. Avocado oil is widely regarded as a premium oil that is healthier than traditional vegetable and seed oils.[1] It consists of approximately 60% oleic acid, which is a heart-healthy monounsaturated fat.[2] Multiple studies have found that compounds in avocado oil may have many health benefits, including improved heart, skin, and eye health.[3]

3. Avocado oil is increasingly being used in processed foods, reflecting consumer interest in its perceived health benefits relative to other cooking oils.[4] Consumers are willing to pay a premium for products made with avocado oil,[5] and

---

[1] *See, e.g.*, https://health.clevelandclinic.org/is-avocado-oil-good-for-you; https://www.healthline.com/nutrition/9-avocado-oil-benefits; https://aanmc.org/naturopathic-kitchen/avocado-oil/

[2] *Id.*

[3] *See, e.g.*, Healthline, Evidence-Based Health Benefits of Avocado Oil, https://www.healthline.com/nutrition/9-avocado-oil-benefits.

[4] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski & Selina C. Wang, Authenticity of avocado and olive oils used as ingredients in commercially processed foods, 6 Applied Food Research 102389 (2026), available at https://doi.org/10.1016/j.afres.2026.102389 (referred to herein as the "UC Davis Study).

[5] *Id.* at 4.

countless companies have been waging aggressive marketing campaigns in an attempt to cash in on this interest. Defendants are such companies.

4. Many products sold by Garza Food Ventures, LLC ("Garza," or "Siete") are labeled "**MADE WITH AVOCADO OIL**" (the "Representation"). On its website, Garza touts its products as being made with "thoughtfully selected ingredients," that were created "to overcome challenging health conditions." Its product line contains gluten-free items, grain-free tortillas and chips, and other items that cater to consumers who are mindful of the ingredients in the foods they eat. Defendants' marketing of chips made with avocado oil is intended to appeal to these ingredient-conscious consumers.

5. Plaintiffs read product labels and check ingredient lists. Plaintiffs each saw the language on and purchased bags of Siete chips (the "Products"), which prominently claimed they were "**MADE WITH AVOCADO OIL**." Plaintiffs purchased the Products in the belief that they were buying chips that contained only avocado oil, and not lower-quality, cheaper, less healthy oils. Plaintiffs' reasonable belief that the Products contain pure avocado oil is bolstered by the Products' "Ingredients" lists, which identify avocado oil, and no other oils, as an ingredient.

6. Based on the Representation, reasonable consumers, like Plaintiffs, believe the oil used to make the Products is pure avocado oil that has not been adulterated through the use or addition of undisclosed, cheaper, less healthy, oils.

7. Unfortunately for Plaintiffs and other consumers, independent testing has determined that the Products are not made with pure avocado oil, despite being prominently labeled as "**MADE WITH AVOCADO OIL**" and identifying only avocado oil in the list of ingredients.

8. Indeed, a group of researchers at the University of California, Davis recently conducted a peer-reviewed study of foods labeled as exclusively containing avocado oil, including the Products, and concluded that the majority of the foods

contained undisclosed, cheaper, less healthy oils.[6] The study, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods* (The "UC Davis Study"), was the first systematic study of whether the avocado oil used as an ingredient in commercially processed foods is authentic.[7] The UC Davis Study determined that most of the oil being marketed as pure avocado oil in fact bears the compositional signature of the cheap refined vegetable oils that avocado oil is supposed to replace.[8]

9. The UC Davis Study highlighted the significance of front-of-package avocado oil claims, noting that "consumers may reasonably interpret front-of-package oil claims as signals of meaningful product differentiation," opining that "[a]s front-of-package marketing increasingly emphasizes premium oils, understanding whether labeled oils meaningfully represent the lipid fraction is essential for consumer transparency," and that because all of the products studied "declared only a single edible oil in the ingredient statement and did not disclose blended oil formulations," and concluding that "consumers would reasonably expect the named oil, particularly when emphasized through front-of-package claims such as 'made with 100% avocado oil' to be the primary lipid source of the product."[9]

10. Had Plaintiffs and the members of the Class known the truth – that the Products (for which they paid a premium) contained undisclosed oils that are less healthy than the pure avocado oil they believed the Products contained exclusively – Plaintiffs and members of the class would not have purchased the Products, or they would have paid less for them.

---

[6] *Id.*

[7] *Id.* at 1.

[8] *Id.*

[9] *Id.* 1 at 2, 4.

11. Plaintiffs now seek relief on behalf of themselves, individually, and on behalf of a class of all other similarly situated individuals who purchased the falsely and deceptively labeled and marketed Products (the "Class"), for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"); California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"); New York's General Business Law ("GBL") §§ 349 and 350; and negligent misrepresentation.

## PARTIES

### Plaintiffs

12. Plaintiff Azizah Ali ("Ali") is a citizen and resident of the State of California. She currently lives in Los Angeles, California. Plaintiff Ali has purchased Siete's Maiz Corn Tortilla Chips (the "Siete Corn Chips") on numerous occasions.

13. Plaintiff Ali purchased the Siete Corn Chips in large part because they were advertised as having been being made with avocado oil. Plaintiff Ali saw and read the words "**MADE WITH AVOCADO OIL,**" which are prominently displayed on the front of the package, before buying the Siete Corn Chips. In addition, Plaintiff Ali reviewed the ingredients list, which identifies avocado oil as the only oil used in making the Siete Corn Chips. Plaintiff Ali reasonably believed, based on the Siete Corn Chips packaging, that the only oil used to make the Siete Corn Chips was avocado oil.

14. Plaintiff Ali relied on the Representation and took it into consideration when making her decision to purchase the Siete Corn Chips. She would not have purchased the Siete Corn Chips, or would have paid less for them, had she known that, instead of containing only one oil – avocado oil – the Siete Corn Chips contained undisclosed, cheaper, less healthy oils. Thus, Plaintiff Ali has suffered injuries in fact

and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as alleged herein.

15. Plaintiff Shahayra Roy ("Roy") is a citizen and resident of the State of New York. She currently resides in Queens, New York. Plaintiff Roy has purchased Siete's Kettle Cooked Potato Chips (the "Siete Potato Chips") on numerous occasions.

16. Plaintiff Roy purchased Siete Potato Chips in large part because they were advertised as having been being made with avocado oil. Plaintiff saw and read the words "**MADE WITH AVOCADO OIL**," which are prominently displayed on the front of the package, before buying the Siete Potato Chips. In addition, Plaintiff Roy reviewed the ingredients list, which identifies avocado oil as the only oil used in making the Siete Potato Chips. Plaintiff Roy reasonably believed, based on the Siete Potato Chips' packaging, that the only oil used to make the Siete Potato Chips was avocado oil.

17. Plaintiff Roy relied on the Representation and took it into consideration when making her decision to purchase the Siete Potato Chips. She would not have purchased the Siete Potato Chips, or would have paid less for them, had she known that, instead of containing only one oil – avocado oil – the Siete Potato Chips contained undisclosed, cheaper, less healthy oils. Thus, Plaintiff Roy has suffered injuries in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as alleged herein.

**<u>Defendants</u>**

18. Defendant PepsiCo, Inc. ("PepsiCo"), is an enormous, publicly traded, multinational company that owns Siete. PepsiCo is incorporated in North Carolina with headquarters in Harrison, New York. Defendant PepsiCo intentionally avails itself of the markets of the State of California, through the promotion, marketing, distribution, and sale of the Products in this State, including in this District. PepsiCo's

contacts with the State of California are sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

19. Defendant Garza Food Ventures, LLC, is a Texas limited liability company with its principal place of business in Austin, Texas. It is wholly owned by PepsiCo and is therefore a citizen of the states of North Carolina and New York. During the relevant time period, Siete distributed the Products throughout the United States, in stores and via online outlets, including in the state of California.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because this case is a class action where the aggregate claims of all members exceeds $5,000,000, exclusive of interests and costs; it is a class of over 100 members; and there is minimal diversity because one of the Plaintiffs is a citizen of a state different from Defendants.

21. Jurisdictional Amount: Plaintiffs are informed and believe that millions, of bags of the Products have been sold and, as a result, the amount in controversy likewise exceeds $5,000,000.

22. Plaintiffs' belief is supported by the fact that, in a similar case that was removed from state court and is now pending in the Northern District of California, *Bachman v. Garza Food Ventures, LLC d/b/a Siete Foods, et al.*, No. 3:26-cv-11341, Defendants acknowledged in their notice of Removal that the Plaintiff's demand for monetary recovery for a class of California purchasers only places well over $5,000,000 in controversy." (ECF. No. 1, ¶ 11.) Defendants cited the declaration of Veronica Garza (the "Garza Declaration"), a Siete employee who is "responsible for overseeing sales data for Siete's products...." (ECF. No. 1-2, ¶ 2.) The Garza Declaration states that, for California alone, sales of the Class Products exceeded $5,000,000 in the previous four years. (*Id.* ¶ 4.) *See also* ¶¶ 43-47, *infra.*

23. Class Size: In light of the data and court filing referenced above, Plaintiffs believe the size of the Class exceeds 100 individuals who are spread throughout the country.

24. Minimal diversity. Because Plaintiff Ali is a citizen of a different state than either of the Defendants, there is minimal diversity.

25. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district. Plaintiff Ali, who resides in this district, made her purchases of the Products within the statute of limitations in this district, and her purchases of the Products were delivered to and used in this district.

## FACTUAL ALLEGATIONS

### A. PepsiCo's Acquisition of Garza

26. PepsiCo's public filings with the United States Securities and Exchange commission reveal that, on January 17, 2025, PepsiCo acquired Garza for $1.2 billion. Additional public sources have reported that, by 2024, Siete's sales had reached $400 million with its products on 37,000 retail shelves in North America. Analysts have reported that the potato chip market was valued at $10.07 billion in 2023 and is expected to grow. The global tortilla chip market, which reportedly was valued at $39 billion in 2025, is likewise expected to grow. Based on these data, Plaintiffs believe the combined damages resulting from the Defendants' sales of the deceptively manufactured and marketed chips exceed $5,000,000.

### B. The Products

27. The Products are potato chips and corn tortilla chips sold under the brand name "Siete." The Products are labeled and marketed as being made with avocado oil. The ingredients list on the Products contains avocado oil, and no other oils, as shown below:




**Figure 1**




**Figure 2**




**Figure 3**




**Figure 4**




**Figure 5**

28. Defendants market Siete as "a Mexican-American food brand, rooted in family, that creates delicious heritage-inspired foods with thoughtfully selected ingredients." The Siete website claims its products were developed by a family working to overcome "challenging health conditions," and its product lines include gluten-free products, paleo-friendly products, and products made with alternative ingredients, like grain-free tortilla chips.

29. Based on the Representation and general marketing, including the claim that the Products are made with avocado oil (and no other oils), consumers reasonably believe that Siete brand products are premium snack products that are healthier alternatives to traditional chips, and, as a result, consumers pay a premium price for them.

**C. The UC Davis Study**

30. In 2025-2026, a group of independent researchers at UC Davis evaluated the accuracy of manufacturers' claims that 37 distinct commercial food products, including the Products at issue here, were made with pure avocado oil. Only products that "declared a single oil (e.g. avocado oil or olive oil) in the ingredient statement" were included in the study.[10] The UC Davis Study was the first systematic study of whether the avocado oil and olive oil used as ingredients in commercially processed foods are authentic.[11]

31. Samples of products marketed as containing only one premium oil were purchased in 2025 and 2026 from online sources and retail stores in California and stored unopened in the laboratory until analysis.[12] Two separate lots of each product were collected and analyzed.[13]

32. To assess the composition of the oil in chips, the researchers blended the chips in a food processor and then extracted the oil using the Soxhlet method with a Buchi E-800 Universal Extractor.[14]

33. Following extraction, the researchers measured both the products' fatty acid and sterol profiles to determine how they compare to the measured fatty acid and sterol profiles in the Codex Alimentarius Standard for Named Vegetable Oils and Olive Oil and Olive Pomace Oils (CXS 210-1999; CXS 33-1981) (the "Codex"). The standards in the Codex were "intended to encompass expected natural variability" of

---

[10] *Id.* at 2.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

fatty acid and sterol compositions in oil that results from differences in cultivars, geographic origin, maturity, and growing conditions.[15]

34. To account further for the analytical uncertainty that could result from biological variability and potential processing influences, "minor deviations were tolerated in the classification criteria." The UC Davis Study explains:[16]

> Deviations limited to a single fatty acid or sterol marker and not exceeding 10% beyond established compositional limits were not considered sufficient to classify a sample as inconsistent and were therefore considered consistent. A sample was considered borderline when no more than two fatty acid or sterol markers marginally exceeded the 10% allowance and lacked concordant deviations across other markers indicative of a non-authentic profile. When a sample was fully consistent in either fatty acids or sterols and borderline in the other, it was considered consistent with authentic oil. Samples that have multiple deviations or patterns inconsistent with authentic reference profiles were classified as inconsistent.

35. The researchers found that many of the samples labeled as containing avocado oil were consistent with a vegetable-oil comparator sample containing canola, corn, soybean, and/or sunflower oil, which suggested "that the fatty acid profiles of those products [were] more consistent with polyunsaturated vegetable oil compositions than with authentic avocado oil,"[17] which is a monounsaturated fat.[18]

36. The researchers ultimately concluded: "Although products labeled with premium oils were generally sold at higher retail prices, price was not predictive of

---

[15] *Id.* at 3.

[16] *Id.* at 6.

[17] *Id.*

[18] *Id.* at 1.

compositional consistency. These findings highlight ingredient-level oil authenticity in processed foods as an under-monitored area of food integrity."[19]

37. Neither of the two separate production lots of the Siete Products that were included in the UC Davis Study contained oil that was compositionally consistent with authentic avocado oil. Rather, the oil recovered from the Products appeared to be nothing more than the cheap, refined oils that health-conscious consumers pay a premium to avoid.[20]

**D. The Representation Is Materially False and Misleading**

38. Defendants prominently display the Representation that the Products are "**MADE WITH AVOCADO OIL**" on the front label of the Products, in the same manner, on every package, as shown above. The Representation is reinforced by the ingredient statement on the back label of the Products, which states that the Products include avocado oil. The Representation is material, i.e., it is important to consumers with respect to their decision to purchase the Products.

39. The placement of the "**MADE WITH AVOCADO OIL**" Representation in a prominent location on their labels is evidence that Defendants are aware that the Representation is material to consumers.

40. Defendants do not disclose anywhere on the Products' packaging, or anywhere else, that the oil used in the Products is not pure avocado oil, or that the oil used in the Product is blended, diluted, or substituted with cheaper, less healthy vegetable or seed oils. Thus, consumers reasonably believe that the oil used to make the Products is avocado oil.

---

[19] *Id.* at 9.

[20] *Id.*, Tables 1-5.

**E. The Harm to Plaintiffs and Members of the Class**

41. Consumers have purchased, and will continue to purchase, the Products in reliance on the Representation that the Products are made with pure avocado oil. Plaintiffs and members of the Class would not have purchased the Products or would have paid less for them had they not relied on the Representation. Plaintiffs and members of the Class paid for Products claiming to contain avocado oil exclusively, but they received Products containing undisclosed, cheaper, less healthy oils. Thus, Plaintiffs and members of the Class did not obtain the full value of the advertised Products due to Defendants' misrepresentations and omissions and, as a result, have suffered financial injuries in the form of paying a price premium that the Products command in the market as a result of Defendants' representation that the Products are made with avocado oil.

42. The harm to consumers is substantial, as a price comparison demonstrates. On Target.com[21], a bag of Siete Sea Salt Potato Chips costs $3.99 for a 5.5 ounce bag ($.73/ounce), while an eight (8) ounce bag of Cape Cod Kettle Chips made with sea salt costs $3.99 ($.50/ounce), and an eight (8) ounce bag of Lay's Classic Potato Chips costs $3.29 ($.41/ounce).

43. If Cape Cod Kettle Chips were sold in a 5.5 ounce bag, the corresponding price would be approximately $ 2.75, and if Lay's Classic Potato Chips were sold in a 5.5 ounce bag, the corresponding price would be approximately $2.20 – significantly less than the $3.99 consumers pay for Siete Sea Salt Potato Chips.

44. On Target.com[22], a bag of Siete Maiz Sea Salt Tortilla Chips costs $5.99 for a 7.5 ounce bag ($.80/ounce), while a twelve (12) ounce bag of Tostitos original corn chips costs $4.59 ($.38/ounce), and an eleven (11) ounce bag of Calidad tortilla chips costs $2.69 ($.24/ounce).

---

[21] As of October 22, 2026.

[22] As of October 22, 2026.

45. If Tostitos original corn chips were sold in a 7.5 ounce bag, the price would be approximately $2.85 per bag, and if Calidad tortilla chips were sold in 7.5 ounce bags, the corresponding price would be approximately $1.80.

46. Based on these numbers, consumers pay approximately $1.24 - 1.79 more per 7.5 ounces of Siete Sea Salt Potato Chips than they would for similar chips made by competitors who did not make false representations about the amount of avocado oil in the chips.

47. Similarly, consumers pay approximately $3.14 - 4.19 more per bag of Siete Maiz Sea Salt Tortilla Chips than they would for similar chips made by competitors who did not make false representations about the amount of avocado oil in the chips.

48. Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the members of the Class.

49. As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiff and the members of the Class in that they:

(1) Paid a sum of money for Products that were not what Defendants represented;

(2) Paid a premium price for Products that were not what Defendants represented;

(3) Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendants warranted;

(4) Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendants represented;

(5) Ingested a substance that was of a different quality than what Defendants promised; and

(6) Were denied the benefit of the beneficial properties of the foods Defendants promised.

50. Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the members of the Class would not have been willing to pay the same amount for the Products they purchased.

51. In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for the Products over comparable products not labeled as being made with avocado oil.

## CLASS DEFINITION AND ALLEGATIONS

52. Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23, and all other applicable laws and rules, on behalf of themselves and all members of the following classes (the Nationwide Class and the New York and California Subclasses, are collectively referred to herein as the "Class"):

> **Nationwide Class:** All natural persons who purchased the Products in the United States.
>
> **New York Subclass:** All natural persons who purchased the Products in the State of New York.
>
> **California Subclass:** All natural persons who purchased the Products in the State of California.

53. Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, judicial officers, and their immediate family members; associated court staff assigned to this case; and those who purchased the Products for resale.

54. Plaintiffs expressly disclaim any intent to seek any recovery in this action for personal injuries that they or any members of the Class may have suffered.

55. **Numerosity.** This action is appropriately suited for a class action. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiffs are informed, believe, and thereon allege, that the proposed Class contains thousands of purchasers of the Products who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiffs.

56. **Existence and Predominance of Common Questions of Law and Fact.** There are questions of law and fact common to the proposed Class that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

1. Whether the oil used to make the Products is avocado oil;
2. Whether Defendants misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Siete;
3. Whether Defendants' use of the packaging that included the Representation constituted false or deceptive advertising;
4. Whether Defendants engaged in unfair, unlawful and/or fraudulent business practices;
5. Whether Defendants' false and misleading statements concerning the Products were likely to deceive the public;
6. Whether Defendants' unlawful conduct, as alleged herein, was intentional and knowing;
7. Whether the Products commanded a price premium as a result of the Representation, and if so, in what amount;
8. Whether Plaintiffs and the Class are entitled to damages and/or restitution, and if so, in what amount;
9. Whether Plaintiffs and the Class are entitled to statutory or punitive damages, and if so, in what amount; and
10. Whether Plaintiffs and the Class are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

57. **Typicality.** Plaintiffs' claims are typical of the claims of members of the Class because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were subject to Defendants' misrepresentations. Moreover, Plaintiffs' claims are typical of the Class members' claims. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

58. **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the proposed Classes. Plaintiffs purchased the Products, and they were harmed by Defendants' deceptive misrepresentations. Plaintiffs have therefore suffered an injury in fact as a result of Defendants' conduct, as did all Class members who purchased the Products. Plaintiffs have retained counsel experienced in complex consumer class actions, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class.

59. **Superiority.** A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him, her, or them. Further, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

60. Plaintiffs seek monetary damages on behalf of the entire Class. Unless a Class is certified, Defendants will be allowed to profit from their deceptive practices, while Plaintiffs and the members of the Class will have suffered damages.

**<u>COUNT I</u>**

***Violation of California's Consumer Remedies Act***
***Cal. Civil Code § 1750, et seq. ("CLRA")***
**(On Behalf of California Subclass)**

61. Plaintiffs repeat and re-allege the allegations above as if set forth herein.

62. Plaintiffs and other Members of the Classes are "consumers" within the meaning of Cal. Civ. Code § 1761(d). By purchasing Defendants' Products, Plaintiffs and the Members of the Classes engaged in "transactions" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

63. Defendants are "persons" within the meaning of Cal. Civ. Code § 1761(c).

64. Defendants' Products are a "good" within the meaning of Cal. Civ. Code § 1761(a).

65. Defendants' unfair and deceptive business practices, as alleged above and herein, were intended to and did result in the sale of the Products.

66. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

67. Civil § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

68. Civil § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

69. Defendants violated these provisions by misrepresenting that the Products are made with avocado oil when they are not and instead are made with cheap, refined seed oils.

70. Defendants' wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

71. Plaintiffs and the Members of the Classes suffered economic injury as a direct and proximate result of Defendants' violations because: (a) they would not have purchased the Products on the same terms if they had known that the Products were not made with avocado oil as Defendants affirmatively stated; (b) they paid a price premium compared to products without the misrepresentation alleged herein; and (c) the Products did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

72. Plaintiffs and Members of the Classes seek to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

## COUNT II

***Violation of California False Advertising Law***
***Cal. Bus. & Prof. Code § 17500 ("FAL")***
**(On Behalf of California Subclass)**

73. Plaintiff repeats and re-alleges the allegations above as if set forth herein.

74. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. It is also unlawful under the FAL to disseminate statements concerning property or

services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

75. The advertisements, labeling, acts, and practices of Defendants relating to the ingredients of the Products misled consumers acting reasonably, as stated above.

76. Plaintiff and Class members suffered injuries in fact as a result of Defendants' actions as set forth herein because they purchased the Products in reliance on Defendants' false and misleading labeling claims concerning, among other things, the Products' ingredients.

77. Defendants' business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendants have advertised and labeled the Products in a manner that is untrue and misleading, which Defendants knew or reasonably should have known, and omitted material information from Siete advertising and product labels.

78. Defendants profited from their sale of the falsely and deceptively advertised and labeled Products.

79. Plaintiff and the Class were damaged because they would not have purchased the Products or would have paid less for them had they known the facts regarding the Products' ingredients.

80. As a result, Plaintiff and the Class are entitled to damages, equitable relief, restitution, and disgorgement of the funds by which Defendants were unjustly enriched.

## COUNT III

***Violation of California Unfair Competition ("UCL"***
***Law Cal. Bus. & Prof. Code §§ 17200, et seq.***
**(On Behalf of California Subclass)**

81. Plaintiff Ali ("Plaintiff" for purposes of Counts III and IV) repeats and re-alleges the allegations above as if set forth herein.

82. Plaintiff brings this claim on behalf of the California Subclass (the "Class" for purposes of Counts III and IV).

83. Defendants' business practices as complained of herein violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"). Defendants' practices constitute "unlawful" business practices in violation of the UCL because, among other things, the Products have been and are being marketed and labeled with false representations.

84. Defendants' actions and practices constitute "unfair" business practices in violation of the UCL, because, among other things, they are immoral, unethical, oppressive, unconscionable, unscrupulous or substantially injurious to consumers, and/or any utility of such practices is outweighed by the harm caused by consumers.

85. Defendants' actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, the Representation was likely to deceive reasonable consumers. Among other things, Defendants made affirmative misrepresentations regarding the Products. Specifically, Defendants represented that the Products contained pure avocado oil. Defendants, however, failed to disclose material facts, namely, that (1) the Products were not made with pure avocado oil, and (2) the Products contained undisclosed, cheaper, less healthy oils. Defendants had a duty to disclose these material facts because Defendants made affirmative representations about the Products. If Plaintiff had known that the Products were not as represented, Plaintiff would not have purchased the Products or would have paid less for them.

86. As a result of Defendants' wrongful business practices, Plaintiff and the Class lost money and suffered an injury-in-fact.

87. Defendants' wrongful business practices pose an ongoing threat and should be enjoined.

88. Plaintiff and the Class seek an order enjoining Defendants' unfair or deceptive acts or practices, equitable relief, and any other just and proper relief

available. The claims for equitable relief are brought in the alternative should Plaintiff not have an adequate remedy at law.

89. Accordingly, Plaintiff and members of the Class are entitled to judgment and equitable relief.

**COUNT IV**

***Violation of New York General Business Law § 349***
**(On Behalf of New York State Subclass)**

90. Plaintiff Roy ("Plaintiff" for purposes of Counts I and II) repeats and re-alleges the allegations above as if set forth herein.

91. Plaintiff brings this claim on behalf of the New York Subclass (the "Class" for purposes of Counts I and II).

92. NY GBL § 349 prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York."

93. Here, PepsiCo purposefully and knowingly took actions directed to consumers, including to Plaintiff and the Class, in the form of branding, marketing, advertising and other messaging, claiming that Defendants' Products were made with pure avocado oil and/or failing to inform consumers that the Products contained undisclosed, cheaper, less healthy oils.

94. Defendants' acts were and are materially misleading because Defendants in fact sold the Products, which contained undisclosed, cheaper, less healthy oils, into commerce. Plaintiff and the Class have been injured as a result of Defendants' deceptive or unfair acts because they purchased Defendants' Products at a premium price based on the fact that the Products were marketed as containing no oils in addition to avocado oil.

95. As such, Plaintiff and the Class seek actual damages and at least the minimum statutory damages of $50 per violation.

## COUNT V

***Violation of New York's General Business Law § 350***
**(On Behalf of New York State Subclass)**

96. Plaintiff repeats and re-alleges the allegations above as if set forth herein.

97. Plaintiff brings this claim individually and on behalf of the Class.

98. NY GBL § 350 prohibits advertising, including labeling, that "is misleading in a material respect."

99. Here, Defendants' advertisements, labeling, acts, and practices relating to the ingredients in the Products misled consumers acting reasonably.

100. Plaintiff and the Class suffered injuries in fact as a result of Defendants' actions as set forth herein because they purchased the Products in reliance on Defendants' false and misleading labeling claims.

101. PepsiCo purposefully and knowingly advertised, marketed, and labeled the Products through the unfair, deceptive, untrue, and misleading Representation. The Representation was false because the Products do not conform to Representation.

102. Defendants profited from the sale of the falsely and deceptively advertised and labeled Products.

103. Plaintiff and the Class were damaged because they would not have purchased the Products, or would have paid less for them, had they known the facts regarding the Products' ingredients.

104. As a result, Plaintiff and the Class are entitled to damages, equitable relief, restitution, and disgorgement of the funds by which Defendants were unjustly enriched.

## COUNT VI

***Negligent Misrepresentation***
**(On Behalf of Nationwide Class and all Subclasses)**

105. Plaintiffs repeat and re-allege the allegations above as if set forth herein.

106. Plaintiffs bring this claim individually and on behalf of the Class against Defendants for negligent misrepresentation.

107. Defendants represented to Plaintiffs and Class members that the Products were manufactured using only one oil – avocado oil. This Representation would lead a reasonable consumer to conclude that the Products did not contain undisclosed, cheaper, less healthy oils.

108. Defendants' representations were false. The UC Davis Study establishes that the Products were manufactured with undisclosed, cheaper, less healthy oils in addition to avocado oil.

109. Defendants had no reasonable grounds for believing the Products contained no oils other than avocado oil.

110. Defendants intended that Plaintiffs and Class members would rely on the Representation. The Representation was placed on product packaging solely to induce customers to purchase the product. Defendants understood, or should have understood, that a reasonable person would believe that the Products marketed as containing "thoughtfully selected" ingredients and labeled as "**MADE WITH AVOCADO OIL**" would believe the Products contained no undisclosed, cheaper, less healthy oils.

111. Plaintiffs and Class members reasonably relied on the Representation, and because of that reasonable belief, Plaintiffs and Class members purchased the Products.

112. As a result, Plaintiffs and Class members were harmed when they purchased the Products that, in fact, contained undisclosed, cheaper, less healthy ingredients than those listed on the Products' packaging. Plaintiffs and Class members paid for products that they would not otherwise have purchased or for which they would have paid less.

113. Plaintiffs and Class members' reliance on Defendants' Representation was a substantial factor in causing this harm. Had Plaintiffs and members of the Class

known that the Products marketed and labeled as containing pure avocado oil actually contained undisclosed, cheaper, less healthy oils, Plaintiffs and Class members would not have purchased them or would have paid less for them.

114. Plaintiffs and Class members seek actual damages, injunctive, and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants as follows:

A. Certifying this action as a class action as soon as practicable, with the Class and Subclasses as defined above, designating Plaintiffs as the named Class Representatives, and designating the undersigned as Class Counsel.

B. Awarding against Defendants the damages that Plaintiffs and the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

C. Awarding Plaintiffs and the Class interest, costs, and attorneys' fees.

D. Awarding Plaintiffs and the Class such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all causes of action or issues so triable.

DATED: October 23, 2026

Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Email: mdb@kuzykclassactions.com

-and-

Leigh Smith, Esq.
**DENLEA & CARTON LLP**
2 Westchester Park Drive, Suite 410
White Plains, NY 10604
Telephone: (914) 331-0100
lsmith@denleacarton.com

*Counsel for Plaintiffs*